# IN THE UNITED STATES DISTRICT COURT FOR
# THE SOUTHERN DISTRICT OF WEST VIRGINIA

## HUNTINGTON DIVISION

GENERAL ASSURANCE OF AMERICA INC.,
a Virginia Corporation,

          Plaintiff,

v.                          CIVIL ACTION NO. 3:17-4628

ARCH INSURANCE COMPANY,
a Missouri Corporation,

          Defendant.

## MEMORANDUM OPINION AND ORDER

Pending before the Court is a Motion for Partial Dismissal by Defendant Arch Insurance Company (Arch). ECF No. 29. For the following reasons, the Court **GRANTS** the motion.

Plaintiff General Assurance of America, Inc. (GAA) filed this action on December 28, 2017, alleging *inter alia* that Arch breached its fiduciary duties and tortuously interfered with GAA's business relationships and dealings. *See Compl.* at ¶¶ l, m, ECF No. 1, at 9. Arch argues these particular claims are barred by West Virginia's two-year statute of limitations and, therefore, must be dismissed. In response, GAA asserts that Missouri's five-year statute of limitations applies under a choice-of-law provision in an Agency Agreement entered into by the parties. In the alternative, GAA contends that, even if the Court determines West Virginia law applies, the statute of limitations did not begin to run until April 30, 2016 and, thus, the Complaint was timely filed.

Although a complete recitation of the history of this case is unnecessary for purposes of the current motion, an abbreviated synopsis of the facts is valuable. The current case is round two of litigation in this Court arising from complex and contentious litigation involving the denial of an insurance claim for damage that occurred to a commercial building owned by Frederick Management Company, LLC (Frederick Management). *See Frederick Mgmt. Co. v. Gen. Assurance of Am., Inc.*, 3:12-3019 (S.D. W. Va. 2012) (original action). When the damage occurred, First Community Bank, which had a security interest in the building, had a forced-placed insurance policy on the property issued by Arch. After insurance issues arose, Frederick Management filed suit against First Community Bank, Arch, GAA, and Compass Claim Service, Inc. Frederick Management alleged that GAA was an agent of First Community Bank and Arch in handling the claim. During that litigation, Arch filed a cross-claim against GAA, demanding that GAA defend and indemnify it. Ultimately, Arch settled with Frederick Management and dismissed its cross-claim against GAA. The settlement agreement between Frederick Management and Arch provided that the parties were to bear "their own costs and attorneys' fees." Ex. 4 to the *Compl.*, at 1, ECF No. 1-2, at 21 (*Partial Dismissal Order*, 3:12-3019, ECF No. 311). Likewise, in the Order voluntarily dismissing Arch's cross-claim against GAA, the parties stipulated to "bear their own costs and attorneys' fees." Ex. 7 to the *Compl.*, at 1, ECF No. 1-2, at 32 (*Voluntary Order of Dismissal of Cross-Cl.*, 3:12-3019, ECF No. 317).

In this action, GAA asserts that Arch breached these agreements because Arch paid for its attorneys' fees and costs and for its settlement with Frederick Management by wrongfully withholding the commissions GAA had earned by selling insurance policies for Arch. Arch also terminated its business relationship with GAA, which resulted in GAA suffering a loss of a

business with, but not limited to, First Community Bank. As relevant here, GAA claims that these actions breached the fiduciary duties Arch owed to it and interfered with its business relationships. Arch denies these claims but, irrespective of whether GAA's claims are meritorious, Arch argues that GAA's claims for breach of fiduciary duties and tortious interference with business relationships are barred by West Virginia's two-year statute of limitations for torts. Arch further argues that the Missouri choice-of-law clause in the Agency Agreement does not apply because these are extra-contractual claims and, therefore, are not controlled by the choice-of-law provision.

As this Court's jurisdiction is based upon diversity pursuant to 28 U.S.C. § 1332, the Court must apply West Virginia's choice-of-law rules in determining what law applies. *Kenney v. Indep. Order of Foresters*, 744 F.3d 901, 905 (4th Cir. 2014). Under West Virginia law, the Court must first decide how the claim at issue is characterized. *Id*. If the claim sounds in contract, the Court generally applies the rule of *lex loci contractus*,[1] although contractual choice-of-law provisions are presumptively valid and are typically enforced. *Id*.; *Blackrock Capital Inv. Corp. v. Fish*, 799 S.E.2d 520, 527 (W. Va. 2017) (recognizing "the presumptive validity of a choice of law provision" (citations and internal quotation marks omitted)).[2] If the claim sounds in tort, the Court generally applies the rule of *lex loci delicti*.[3] *Kenney*, at 905 (citations omitted).

---

[1]"Under the *lex loci contractus* rule, where the contract is 'made' is defined as 'where the last event necessary to make a contract binding occurs.'" *Norfolk S. Ry. Co. v. Nat'l Union Fire Ins. of Pittsburgh, PA*, No. 2:12-CV-05183, 2013 WL 12182146, at *4 (S.D. W. Va. Mar. 29, 2013) (citations omitted).

[2]Such provisions are presumptively valid under West Virginia law "(1) unless the provision bears no substantial relationship to the chosen jurisdiction or (2) the application of the laws of the chosen jurisdiction would offend the public policy of this State." *Manville Pers. Injury Settlement Tr. v. Blankenship*, 749 S.E.2d 329, 336 (W. Va. 2013) (citations omitted).

[3]Under the doctrine of *lex loci delicti*, "the substantive rights between the parties are

Under West Virginia laws, the Court finds that GAA's claims for breach of fiduciary duty and for tortious interference with business relationships are considered torts, subject to West Virginia's two-year statute of limitations. *See* West Virginia Code § 55–2–12 (setting forth the statute of limitations);[4] *Starcher v. Pappas*, No. 16-1160, 2017 WL 5157366, at *5 (W. Va. Nov. 7, 2017) (holding "an action for breach of fiduciary duty is governed by a two-year statute of limitations" (citation omitted)); *Blyler v. Matkovich*, Nos. 14-0760 & 14-1335, 2015 WL 7628843, at *3 (W. Va. Nov. 23, 2015) (stating West Virginia law "is also clear that the tort[] of . . . breach of fiduciary duty . . . [is] governed by the two-year statute of limitation in West Virginia Code § 55–2–12"); Syl. Pt. 6, *Garrison v. Herbert J. Thomas Mem'l Hosp. Ass'n*, 438 S.E.2d 6, 7 (W. Va. 1993) (stating "[a]n individual's right to conduct a business or pursue an occupation is a property right. The type of injury alleged in an action for tortious interference with business relationship is damage to one's business or occupation. Therefore, the two-year statute of limitations governing actions for damage to property, set forth under W. Va. Code, 55–2–12

---

determined by the law of the place of injury." *Vest v. St. Albans Psychiatric Hosp., Inc.*, 387 S.E.2d 282, 283 (W. Va. 1989) (citation omitted).

[4]West Virginia Code § 55-2-12 provides:

> Every personal action for which no limitation is otherwise prescribed shall be brought: (a) Within two years next after the right to bring the same shall have accrued, if it be for damage to property; (b) within two years next after the right to bring the same shall have accrued if it be for damages for personal injuries; and (c) within one year next after the right to bring the same shall have accrued if it be for any other matter of such nature that, in case a party die, it could not have been brought at common law by or against his personal representative."

W. Va. Code § 55-2-12.

[1959], applies to an action for tortious interference with business relationship"). GAA argues, however, the Court should apply Missouri law because applying West Virginia law is inconsistent with Arch's representation in the underlying action that Missouri law applies and GAA had agreed that "the Agency Agreement between GAA and Arch was governed by the laws of the State of Missouri." *Resp. on Behalf of GAA to Arch's Mot. for Partial Dismissal*, at 1, ECF No. 38. In its Reply, Arch does not deny Missouri law applied to its cross-claims for breach of contract and contractual indemnity in the underlying action, but Arch insists the provision does not apply to the extra-contractual claims at issue here.

Upon consideration, the Court agrees with Arch. In fact, GAA points to no language in the Agency Agreement, or the choice-of-law provisions contained therein, that it believes is broad enough to govern non-contractual tort claims. *See Cavcon, Inc. v. Endress + Hauser, Inc.*, 557 F. Supp. 2d 706, 720 (S.D. W. Va. 2008) (finding that a choice-of-law provision applied to a breach of contract claim, but not a claim for tortious interference or other tort or quasi-tort claims); *Work While U-Wait, Inc. v. Teleasy Corp.*, Civ. Act. No. 2:07-00266, 2007 WL 3125269, at *6 (S.D. W. Va. Oct. 24, 2007) (stating, where a choice-of-law provision is narrow and applies only to governing and construing the agreement itself, and does not purport to govern all disputes between the parties, the choice-of-law provision does not apply to a fraud claim that sounds in tort); *see also FDIC Corp. v. British-Am. Corp.*, 755 F. Supp. 1314, 1325 (E.D. N.C. 1991) ("A contractual choice-of-law provision selecting the law to govern the construction or interpretation of the contract has no impact on the law which governs claims unrelated to the construction or interpretation of the contract." (citations omitted)). Accordingly, the Court shall apply West Virginia's two-year statute of limitations to the claims at issue here.

GAA further argues that, even if West Virginia's two-year statue of limitations applies, its claims are not barred by the statute of limitations. Specifically, GAA states that Arch did its final accounting of the commissions on April 30, 2016, and it was at that point it became clear that Arch would not refund the commissions it deducted from the account. Therefore, GAA argues its claims were timely filed as of December 28, 2017.

Arch rebuts this argument, however, by pointing to the Complaint itself. Arch argues that nowhere in the Complaint does GAA mention the final accounting. In fact, GAA attached several documents to its Complaint, demonstrating that the claims accrued—at the latest—on February 13, 2014. Specifically, GAA attached to its Complaint an Affidavit from Ronald H. Vassar, President of GAA, dated March 24, 2014, in which he states, in part:

> 4. In the onset of GAA's relationship with Arch, Arch established a Contingency Loss Reserve Fund (CLRF) of cumulative earned premiums on business produced by GAA in the amount of $250,000. The CLRF has been retained by Arch and according to the contract "The Insurer may deduct from the CLRF any amount the Agent fails to pay the Insurer when due under the terms of the agreement."
>
> 5. Without seeking the permission or agreement of GAA, and over strenuous objection of GAA, Arch Insurance Company has included what GAA believes to be every legal fee paid by Arch to its attorneys concerning this [the underlying] civil action, as well as what is believed to be the settlement paid by Arch to Frederick Management in their CLRF.
>
> 6. Arch Insurance Company has charged all FM legal fees to General Assurance of America under the pretense of Incurred Loss Adjustment Expenses. A total of $143,967.60 has been deducted from GAA's CLRF under Incurred Loss Adjustment Expenses.
>
> 7. Arch Insurance Company has charged what we believe to be the FM settlement back to GAA under the pretense of Net Incurred Losses. A total of $120,000 has deducted from GAA's CLRF under Net Incurred Losses, and was done so on December 2, 2013.

> 8. A total of $263,967.60 has been charged against GAA's CLRF by Arch Insurance Company. [See Appendix 3.]
>
> 9. Moreover on page seven of the 2004 Agency Agreement between Arch and GAA, it describes the "Final Accounting: In the event of termination of this agreement, final accounting shall be one year following the expiration or termination of the master policy and/or certificate of insurance." If the final accounting is negative, Arch will contend that GAA owes the difference to Arch.

Ex. 1 to the *Compl.*, *Aff. of Ronald H. Vassar*, at 2-3, ECF No. 1-2, at 3-4. The exhibits attached to the Affidavit also were attached to the Complaint. These included: (1) a letter from First Community Bank sent by Certified Mail on August 14, 2013, stating the Bank was not renewing its agreement with GAA after it expired on January 31, 2014. *Id.*, *Letter from Garry Sutis, Director of Operations of First Cmty. Bank to Laura Little, Senior Vice President of GAA*, (mailed Aug. 14, 2013), ECF No. 1-2, at 6; (2) a letter dated December 9, 2013, to Mr. Vassar from John Mohler, Vice President of Arch, stating that Arch was terminating the Agency Agreement it had with GAA, effective April 9, 2014. *Id.*, Letter *from John Mohler to Mr. Vassar*, (Dec. 9, 2013), ECF No. 1-2, at 9; and (3) the "Loss Activity by Master Policy Prefix from 10/01/2012 to 03/05/2014" showing various loss amounts deducted by Arch. *Id.*, *Loss Activity by Master Policy Prefix from 10/01/2012 to 03/05/2014*, at 1-2 (Mar. 5, 2014), ECF No. 1-2, at 12-13.[5]

In considering Arch's argument, the Court first recognizes that the statute of limitations is an affirmative defense that may be raised in a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Dean v. Pilgrim's Pride Corp.*, 395 F.3d 471, 474 (4th Cir. 2005). Generally, however, a 12(b)(6) motion based upon the statute of limitations "is only permissible

---

[5]The February 13, 2014 date that Arch argues begins running the statute of limitations appears to be the last "Payment Date" on the Loss Activity Master Policy Prefix. *Id.*

'in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint . . .' In such a rare circumstance[], 'all facts necessary to the affirmative defense [must] clearly appear on the face of the complaint.'" *Waugh v. Elan Fin. Serv.*, No. 3:17-4378, 2018 WL 2976430, at *4 (S.D. W. Va. June 13, 2018) (quoting *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007)). However, in evaluating a Rule 12(b)(6) motion, a court also may consider documents attached to a complaint and other extrinsic documents "so long as they are integral to the complaint and authentic." *Philips v. Pitt Cty. Mem'l Hosp.,* 572 F.3d 176, 180 (4th Cir. 2009) (citation omitted); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *Fayetteville Inv'rs v. Commercial Builders, Inc*., 936 F.2d 1462, 1465 (4th Cir. 1991) (stating that exhibits attached to a complaint "are a part of the complaint which was subject to a motion to dismiss under Rule 12(b)(6)" as being time barred); *Opsitnick v. Ray*, No. 5:14-CV-405-BO, 2015 WL 300420, at *2 (E.D. N.C. Jan. 22, 2015) (stating a court may consider documents attached and integral to a complaint when a 12(b)(6) motion raises a statute of limitations challenge). Here, neither party argues that the documents attached to GAA's Complaint are not authentic or integral to GAA's allegations. Indeed, GAA relies upon and references these documents throughout its Complaint. Therefore, as the ultimate question in this case is when GAA's causes of action arose for its claims of breach of fiduciary duty and tortious interference with its business relationships, the Court must look to the Complaint and the attachments to ascertain whether that determination can be made.

With certain exceptions, a tort action typically accrues under West Virginia law "when a tort occurs." *Merrill v. W. Va. Dep't of Health & Human Res.,* 632 S.E.2d 307, 312

(W. Va. 2006) (internal quotation marks and citation omitted).[6] Although the parties do not separately analyze GAA's claims for breach of fiduciary duty and tortious interference with business relationships, the Court finds it is necessary to do so to determine whether the facts set forth in the Complaint and the attachments are sufficient to decide when these claims accrued.

Turning first to GAA's claim for tortious interference with a business relationship, GAA asserts in the Complaint that Arch tortiously interfered with its business relationship with First Community Bank and other banking institutions, resulting in a loss of those business relationships. *Compl.*, at ¶¶ 9, 17. In support, GAA cites the letter mailed on August 14, 2013, that it attached to the Complaint, from First Community Bank stating it will not renew its contract with GAA. Ex. 9 to the *Compl.*, *Letter from Mr. Stutis to Ms. Little*, ECF No. 1-2, at 56. Additionally, GAA attached the letter from Arch dated December 9, 2013, stating it was terminating its Agency Agreement with GAA and that it "will be cancelling the active master policies that you solicited under the Agency Agreement for all product lines." Ex. 3 to the *Compl.*, *Letter from Mr. Mohler to Mr. Vassar*, ECF No. 1-2, at 18. In his Affidavit dated March 24, 2014, Mr. Vassar referenced and attached both of these letters as exhibits, acknowledging the nonrenewal and termination of the agreements. In light of these documents, it is clear and beyond dispute that GAA's claim for tortious interference with business relationships accrued, at the latest, when Arch informed GAA in December of 2013 that it was no longer going to do business with it and was cancelling all the active policies GAA solicited. Therefore, the Court finds that GAA's claim for tortious

---

[6]Exceptions to this general rule include West Virginia's discovery rule, equitable tolling, and equitable estoppel. *See Bishop v. W. Va. Reg'l Jail & Corr. Facility Auth.*, No. 2:17-CV-03064, 2018 WL 1513294, at *4 (S.D. W. Va. Mar. 26, 2018). GAA does not argue that any of these exceptions apply to this case.

interference with business relationships is barred by West Virginia's two-year statute of limitations.

Turning next to GAA claim for breach of fiduciary duty, GAA alleges in its Complaint that Arch owed it fiduciary duties under the Agency Agreement. *Compl.*, at ¶6. With regard to this claim, GAA asserts, in part, that Arch breached its fiduciary duties by disrupting GAA's business relationships. *Id*. at ¶9. For the reasons explained above with respect to the tortious interference claim, this allegation also is barred by the statute of limitations.

Another breach of fiduciary duty identified by GAA in the Complaint is that Arch did not include GAA, as its Agent/Broker, in Arch's settlement with Frederick Management during mediation on November 12, 2013. *Id*. at ¶¶9, 13. GAA also attached to the Complaint a copy of this Court's Partial Dismissal Order, entered on December 27, 2013, recognizing the settlement. Ex. 4 to the *Compl.*, ECF No. 1-2, at 21-22. Given that these events occurred in late 2013, a breach of fiduciary duty based upon these facts is clearly beyond the statute of limitations.

Finally, GAA claims that Arch breached its fiduciary duty by deducting the settlement it paid Frederick Management and its attorneys' fees and costs from the commissions it owed GAA under the Agency Agreement. *Id*. at ¶¶9, 15. In Mr. Vassar's Affidavit dated March 24, 2014, however, he states (1) Arch charged its legal fees to GAA "under the pretense of Incurred Loss Adjustment Expenses;" (2) on December 2, 2013, a total of $120,000 was deducted as Net Incurred Losses from GAA's CLRF, which GAA believed was the settlement proceeds paid to Frederick Management; and (3) "[a] total of $263,967.60 has been charged against GAA's CLRF

by Arch[.]" Ex. 1 to the *Compl.*, *Affidavit of Mr. Vassar*, at ¶¶ 6-8. Additionally, Appendix 3 attached to Mr. Vassar's Affidavit is the Loss Activity by Master Policy Prefix, printed on March 5, 2014, showing, inter alia, the loss activity Arch claimed occurred between October 25, 2012 and February 13, 2014. Although GAA argues it "had hoped" that Arch would refund those commissions when it completed its final accounting on April 30, 2016, the statute of limitations did not accrue when GAA's hopes were dashed. The statute of limitations accrued when the tort occurred, and the Complaint and the attachments make it clear that Arch deducted those amounts, and GAA knew those deductions occurred, at some point prior to Mr. Vassar's Affidavit in March of 2014. As this action was filed more than two years after that date, the statute of limitations had expired.

Moreover, even if the statute of limitations had not expired, this aspect of GAA's breach of fiduciary claim would be barred under West Virginia law. The Complaint asserts that the commissions were payable "under the Agency Agreement." *Compl.* at ¶9. However, under West Virginia law, a recovery under tort law is barred if the gist-of-the-action "is, in substance, an action on [a] contract, whatever may be the form of the pleading." *Dan Ryan Builders, Inc. v. Crystal Ridge Dev., Inc.*, 803 S.E.2d 519, 526 (W. Va. 2017) (internal quotation marks and citation omitted). Specifically, tort recovery is not permitted when any of these factors are shown:

> "(1) where liability arises solely from the contractual relationship between the parties; (2) when the alleged duties breached were grounded in the contract itself; (3) where any liability stems from the contract; and (4) when the tort claim essentially duplicates the breach of contract claim or where the success of the tort claim is dependent on the success of the breach of contract claim."

*Id*. (quoting *Gaddy Eng'g Co. v. Bowles Rice McDavid Graff & Love, LLP*, 746 S.E.2d 568, 577 (W. Va. 2013) (per curiam) (other citations omitted)). Here, GAA's claim that Arch breached its

-11-

fiduciary duty by not paying GAA its commissions under the Agency Agreement is based upon, and arises from, the parties' contractual agreement. Additionally, GAA has made a breach of contract claim in its Complaint to recoup those funds. Thus, GAA could not proceed on this aspect of its claim irrespective of the fact that it is barred by the statute of limitations.

Accordingly, for the foregoing reasons, the Court **FINDS** GAA's claims for breach of fiduciary duty and tortious interference with business relationships are barred by the statute of limitations. Therefore, the Court **GRANTS** Arch's Motion for Partial Dismissal (ECF No. 29) and **DISMISSES** these claims from this action.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: December 12, 2018

_____
ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE