# IN THE UNITED STATES DISTRICT COURT FOR
# THE SOUTHERN DISTRICT OF WEST VIRGINIA

## HUNTINGTON DIVISION

GENERAL ASSURANCE OF AMERICA INC.,
a Virginia Corporation,

    Plaintiff,

v.                            CIVIL ACTION NO. 3:17-4628

ARCH INSURANCE COMPANY,
a Missouri Corporation,

    Defendant.

## MEMORANDUM OPINION AND ORDER

Pending before the Court are two motions filed by Plaintiff General Assurance of America, Inc. (GAA): (1) its Motion for Further Reconsideration of Memorandum Opinion and Order Entered by this Court on December 12, 2018 (ECF No. 98); and (2) its Motion to Voluntarily Dismiss, without Prejudice, its Claims for Breach of Fiduciary Duty and Tortious Interference with Business Relationships Against Arch Insurance Company. ECF No. 118. Defendant Arch Insurance Company (Arch) opposes both motions. Upon consideration, the motions are **DENIED**.

The relevant history of this action was set forth by this Court in its December 12, 2018 Memorandum Opinion and Order. *Gen. Assurance of Am. Inc. v. Arch Ins. Co.*, 3:17-4628, 2018 WL 6531682 (Dec. 12, 2018). In that Memorandum Opinion and Order, the Court found, inter alia, GAA's claims for breach of fiduciary duty and tortious interference with business relationships were barred under West Virginia's statute of limitations and dismissed those claims. Thereafter, GAA filed a Motion for Reconsideration, arguing the Court made a clear error in applying West Virginia's two-year statute of limitations rather than Missouri's five-year statute of

limitations. The Court rejected GAA's arguments on the grounds that it alleged in its Complaint that "[t]he events giving rise to the claims asserted herein on behalf of GAA against Arch occurred within the United States District Court for the Southern District of West Virginia at Huntington." *Compl.* at ¶3. Additionally, even if the Court assumed the causes of action accrued in Missouri, West Virginia's borrowing statute nevertheless applied, barring the claims. *Mem. Op. & Order*, at 3 (Jan. 18, 2019), ECF No. 81 (quoting West Virginia Code § 55-2A-2, which provides that "[t]he period of limitation applicable to a claim accruing outside of this State shall be either that prescribed by the law of the place where the claim accrued or by the law of this State, whichever bars the claim"). As this decision did not dismiss all GAA's claims, the case proceeded to discovery.

Thereafter, nearly three months later, GAA filed its second motion for reconsideration. On July 17, 2019, the Court held a pretrial conference and heard arguments on that motion, the parties' cross motions for summary judgment, and several motions in limine. For the reasons fully explained on the record, the Court denied GAA's Motion for Partial Summary Judgment, granted Arch's Motion for Summary Judgment on the remaining claims, and denied as moot all the pending motions in limine. However, the Court held in abeyance GAA's second motion to reconsider the Court's previous dismissal of GAA's breach of fiduciary duty and tortious interference claims. As GAA argued that recently obtained discovery was relevant to those claims, the Court directed GAA to file a Sur-Reply with any supplemental discovery it obtained that was not available when the Court originally made its ruling. The Court also gave Arch the right to file a Sur-Response.

Following the hearing, GAA failed to file a Sur-Reply or any additional supplemental discovery. Instead, it filed a Motion to Voluntarily Dismiss, without Prejudice, its Claims for Breach of Fiduciary Duty and Tortious Interference with Business Relationships Against Arch Insurance Company. Arch responded in opposition to this new motion. In its Reply, GAA insists that, because it "had to go to the effort and expense of filing Motions to Compel ARCH to cooperate with discovery and produce witnesses for depositions" and it did not get that discovery until after the Court ruled on its breach of fiduciary duty and tortious interference claims, the Court should take an "equitable approach" and allow GAA to voluntarily dismiss those claims so it can, if it chooses, refile another civil action. *GAA's Reply*, at 3, ECF No. 121. In the alternative, GAA asks the Court rule on its second request for reconsideration.

Initially, the Court finds an obvious procedural flaw with GAA's argument that it should be permitted to voluntarily dismiss claims that currently are not pending. As those claims already were dismissed and have not been revived, there simply is nothing to be voluntarily dismissed. The only way the Court could grant GAA's motion is if the Court first would reconsider its prior decisions and reinstate those claims. However, GAA has declined the Court's offer to supplement its motion with any additional arguments or recent discovery it believes the Court should take into account on reconsideration. Rather, GAA requests it rule on the motion based upon what already was submitted to the Court.

As this Court explained in its first Memorandum Opinion and Order denying reconsideration, Rule 54(b) of the Federal Rules of Civil Procedure provides that "'a district court retains the power to reconsider and modify its interlocutory judgments . . . at any time prior to final

judgment when such is warranted.'" *Mem. Op. & Order*, at 2, 3, ECF No. 81 (quoting *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514-15 (4th Cir. 2003) (citations omitted)). Rule 54(b) is more flexible than motions to reconsider final judgments under Rule 59(e) to account for developments in litigation and new facts or arguments that are brought to light. *Carlson v. Boston Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017) (citations omitted). Although "[t]his standard closely resembles the standard applicable to motions to reconsider final orders pursuant to Rule 59(e), . . . it departs from such standard by accounting for potentially different evidence discovered during litigation as opposed to the discovery of '"new evidence not available at trial."' *Id.* (quoting *Pac. Ins. Co. v. Am. Nat. Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998)). However, this Court's discretion "is not limitless," and the Fourth Circuit has "cabined revision pursuant to Rule 54(b) by treating interlocutory rulings as law of the case." *Id*. (citations omitted). Accordingly, "a court may revise an interlocutory order under the same circumstances in which it may depart from the law of the case: '(1) a subsequent trial producing substantially different evidence; (2) a change in applicable law; or (3) clear error causing manifest injustice.'" *Id*. (internal quotation marks, alteration, and citations omitted).

In its motion, GAA specifically argues that the Court should reinstate its breach of fiduciary duty and tortious interference claims "based upon newly discovered evidence at the Deposition of Keith Pittrich." *GAA's Mot. for further Recon. of Mem. Op. and Order*, at 2, ECF No. 98. Mr. Pittrich is Vice President of Client Support for Arch and was deposed on March 6, 2019, which was after the Court denied GAA's first motion seeking reconsideration. However, the Court finds the parts of Mr. Pittrich's deposition highlighted by GAA involve accounting procedures and those parts are completely irrelevant to its claims that Arch breached its fiduciary

duty and tortuously interfered with its business relationships by terminating the Agency Agreement, by notifying the insured their policies were cancelled, and by failing to include GAA in its settlement with Frederick Management Company, LLC (Fredrick Management). Thus, to the extent GAA's claims are based upon these allegations, they cannot be revived based upon "new evidence" discovered from Mr. Pittrich's deposition.

With respect to GAA's allegation that Arch wrongfully notified the insured banking institutions their policies were cancelled, GAA argued at the Pretrial Conference that it was "the timing" of those notifications which gives rise to its action. GAA conceded there is nothing in the Agency Agreement restricting Arch from contacting the insured, and it acknowledged "that under the policy of insurance that there was a provision where Arch *would notify* GAA's clients." Transcript of Oral Argument, at 37-39 (italics added), ECF No. 117. Nevertheless, GAA claims the parties made a separate oral agreement to give GAA time to find another insurance carrier before any notifications were sent, and Arch violated that agreement when it sent out the notices. *Id*. at 37, 38. Arch not only denies such an agreement was made, but it also asserts it was required by law to notify the insured that the contracts were cancelled and it could not have agreed to contract away its legal obligations. *Reply Mem. in Supp. of Def. Arch Ins. Co.'s Mot. for Summ. J.*, at 6 (citing Va. Code Ann. §38.2-231), ECF No. 79.

In support of its position, the only thing GAA references is an email from Tommy Walton, Vice President of GAA, dated March 5, 2014, to an individual named Glenn Ballew at Arch. In that email, Mr. Walton states that Mr. Ballew had "suggested to Ron Vassar, [President of GAA,] that Arch would give GAA time to move the business, in hopes of not damaging our

relationships with our lenders." *Email from Tommy Walton to Glenn Ballew* (Mar. 5, 2014), ECF No. 98-1, at 145. In deciding whether this email is sufficient to reconsider this Court's prior decisions, the Court first recognizes this email could not be considered newly discovered evidence as it was an email from an employee of GAA, not Arch. Second, beyond the fact the email is not new evidence, if there was an oral agreement between the parties, it also would not be new evidence because GAA would have known about it in 2014, when the agreement purportedly was made. Third, even if GAA could get past the obvious procedural hurdles it falls short of under Rule 54, the contents of this single email are insufficient to show an oral agreement existed. The email merely indicates Mr. Walton believed there was a discussion between GAA's President and Mr. Ballew about giving GAA time, presumably to find a new insurance company. Not only is the email vague on the precise details of the alleged oral agreement, and seemingly written by someone was not even part of the alleged discussion, GAA has not produced any other evidence—despite being given the opportunity to do so—whereby Arch affirmed the contents of this email or otherwise contractually agreed not to notify the insured until a certain point in time. Therefore, for all these reasons, the Court finds GAA has failed to establish sufficient grounds under Rule 54 for this Court to reconsider its prior decisions with respect to the timing of the notices and, even if it had, this single, brief email is insufficient to show an oral agreement existed.[1] Accordingly, the Court **DENIES** GAA's motion to reconsider its claim that Arch violated an oral agreement regarding the timing of the notices.

---

[1]The Court need not address the issue of whether such an oral agreement could even exist apart from the Agency Agreement's requirement that modifications of that Agreement had to be in writing.

The Court next turns to GAA's allegations "that Arch breached its fiduciary duty by deducting the settlement it paid Fredrick Management and its attorneys' fees and costs from the commissions it owed GAA under the Agency Agreement." *Gen. Assurance of Am.,* 3:17-4628, 2018 WL 6531682, at *5 (citing *Compl.*, at ¶¶9, 15). In its briefing, GAA only argues that Mr. Pittrich's statements during his deposition demonstrate it was justified in believing that Arch made provisional deductions from accounts and those accounts were "fluid" until a final accounting was performed, in this case in June of 2016. *Depo. of Keith Pittrich*, at 41, ECF No. 98-1 at 42. In his deposition, Mr. Pittrich generally explained that there are times when a loss reserve may have been set too high so there is a reduction in the reserve. *Id.*. When presented with an exhibit of a Loss Activity report for GAA, he also said it appeared that one entry was reversed and $478.78 was put back into GAA's account in January 2013, although he could not tell why or what order it occurred. *Id*. at 41, 42, ECF No. 98-1 at 42-43; Loss Activity by Master Policy Prefix, at 1, ECF No. 98-1, at 136. GAA cites no evidence from Mr. Pittrich in which he speaks directly to the deductions made by Arch that are at issue here, and the Court finds, to the extent his statements are even relevant, they do not show Arch was going to refund the funds at issue in this case during the final accounting. Likewise, his statements do nothing to change the fact that the statute of limitations did not begin to run when GAA's hopes were dashed because the money was not refunded to their account. Instead, as this Court previously stated "[t]he statute of limitations accrued when the tort occurred, and the Complaint and the attachments make it clear that Arch deducted those amounts, and GAA knew those deductions occurred, at some point prior to Mr. Vassar's Affidavit in March of 2014." *Gen. Assurance of Am. Inc.*, 3:17-4628, 2018 WL 6531682, at *5. Moreover, and importantly, as this Court held in its prior decision, irrespective of the statute of limitations, this claim arises under the Agency Agreement and, thus, recovery under tort law is barred. *Id*.

Accordingly, for the foregoing reasons, the Court **DENIES** GAA's Motion for Further Reconsideration of Memorandum Opinion and Order Entered by this Court on December 12, 2008. ECF No. 98. As those claims remain dismissed, the Court also **DENIES** its Motion to Voluntarily Dismiss, without Prejudice, its Claims for Breach of Fiduciary Duty and Tortious Interference with Business Relationships Against Arch Insurance Company. ECF No. 118.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: January 22, 2020

_____
ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE